IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CONTINENTAL WESTERN INSURANCE COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> CAPUTO'S NEW FARM PRODUCE, INC. d/b/a CAPUTO'S FRESH MARKETS and EVAN KRAUSE, <br><br> Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    22-CV-6511 |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Now comes Plaintiff, Continental Western Insurance Company ("Continental Western"), by and through its attorneys, Dana A. Rice and Adam P. Joffe of Traub Lieberman Straus & Shrewsberry LLP, and for its Complaint for Declaratory Judgment against Defendants, Caputo's New Farm Produce, Inc. d/b/a Caputo's Fresh Markets ("Caputo's") and Evan Krause ("Krause"), it states as follows:

**THE PARTIES**

1. Continental Western is, and at all relevant times has been, a corporation organized under the laws of Iowa with its principal place of business in Des Moines, Iowa. At all times relevant hereto, Continental Western was an insurer whose policies may be sold in Illinois.

2. At all relevant times, Caputo's was a corporation organized under the laws of Illinois with its principal place of business in Carol Stream, Illinois.

3. At all relevant times, Krause was a citizen of Illinois.

**JURISDICTION**

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332(a)(1) in that the citizenship of the parties is completely diverse and the amount in controversy exceeds the

sum of $75,000, exclusive of interest and costs. Specifically, this matter relates to an insurance policy providing in excess of $75,000 in coverage and an underlying putative class action lawsuit seeking in excess of $75,000.

## VENUE

5.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) and (2) because a substantial part of the events giving rise to this litigation occurred in this judicial district. Specifically, Krause allegedly suffered injury at Caputo's business address in this judicial district. The underlying lawsuit giving rise to this coverage action is currently pending in the Circuit Court of Cook County, Illinois. The subject insurance policy giving rise to this suit covered a risk in this judicial district and was delivered to Caputo's business address in this judicial district. Moreover, at least one of the defendants is a citizen of this judicial district.

## THE UNDERLYING LAWSUIT

6.      On or about September 14, 2018, Krause, individually and on behalf of all other persons similarly situated, filed a putative Class Action Complaint against Caputo's and ADP in the Circuit Court of Cook County, Illinois, under Case Number 2018 CH 11660 ("*Krause* Lawsuit").

7.      On or about April 15, 2019, Krause filed a First Amended Complaint against Caputo's and ADP. (A true and correct copy of the First Amended Complaint in the *Krause* Lawsuit is attached hereto as **Exhibit A** and incorporated herein by reference.)

8.      The *Krause* Lawsuit arises out of Caputo's "unlawful collection, use, storage and disclosure of Plaintiff's sensitive biometric data" in violation of the BIPA. (Ex. A.)

9.      The *Krause* Lawsuit alleges that Caputo's is a specialty grocery store that owns seven locations in the Chicago area. (Ex. A, ¶ 1.)

10      The *Krause* Lawsuit alleges that when Caputo's hires an employee, he or she is enrolled in an ADP employee database, which is used to monitor the time worked by hourly employees.  (Ex. A, ¶ 2.)

11.     The *Krause* Lawsuit further alleges that rather than traditional timekeeping techniques Caputo's requires its employees to have their fingerprints scanned by a biometric timekeeping device.  (Ex. A, ¶ 3.)

12.     The *Krause* Lawsuit alleges that, unlike identification badges or time cards (which can be changed or replaced if stolen or compromised), fingerprints are unique biometric identifiers associated with each Caputo's employee.  This allegedly exposes Caputo's employees to serious and irreversible privacy risks. (Ex. A, ¶ 5.)

13.     The *Krause* Lawsuit argues that recognizing these privacy risks, the Illinois legislature enacted the BIPA to regulate companies that collect, store, and use Illinois citizens' biometric information.  (Ex. A, ¶ 9.)

14.     The *Krause* Lawsuit alleges that the BIPA provides a private right of action and allows a prevailing party to recover $1,000 for negligent violations of the BIPA and $5,000 for intentional or reckless violations.  (Ex. A, ¶ 20.)

15.     The *Krause* Lawsuit further alleges that the BIPA is an informed consent statute that achieves its goal by making it unlawful to collect, capture, purchase, receive, or otherwise obtain a person's biometric information unless it first: (1) informs the subject in writing that the biometric identifier or information is being collected, stored, and used; (2) informs the subject in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and (3) receives a written release executed by the subject of the biometric identifier or biometric information.  (Ex. A, ¶ 21.)

3

16.     The *Krause* Lawsuit alleges that biometric identifiers include retina and iris scans, voiceprints, hand scans, face scans, and fingerprints.  (Ex. A, ¶ 23.)

17.     The *Krause* Lawsuit alleges that the BIPA also establishes controls for how companies handle Illinois citizens' biometric identifiers and biometric information.  (Ex. A, ¶ 24.)

18.     The *Krause* Lawsuit alleges that the BIPA prohibits a private entity from disclosing a person's biometric identifiers or information without obtaining consent.  (Ex. A, ¶ 24.)

19.     The *Krause* Lawsuit  further alleges that the BIPA also prohibits selling, leasing, trading, or otherwise profiting from a person's biometric identifiers or information and requires companies to develop and comply with a written policy (made available to the public) establishing a retention schedule and guidelines for permanently destroying biometric identifiers and information when the initial purpose for collecting the identifiers or information has been satisfied or within three years of the individual's last interaction with the company.  (Ex. A, ¶ 25.)

20.     The *Krause* Lawsuit alleges that notwithstanding the clear and unequivocal requirements of the law, Caputo's and ADP disregard the Caputo's employees' statutorily protected privacy rights and unlawfully collect, store, disseminate, and use employees' biometric data in violation of the BIPA.  (Ex. A, ¶ 30.)

21.     The *Krause* Lawsuit further alleges that Caputo's employees are required to have their fingerprints scanned to enroll them in its ADP employee database.  (Ex. A, ¶ 31.)

22.     The *Krause* Lawsuit alleges that Caputo's then uses a time tracking system supplied by ADP that requires employees to use their fingerprints as a means of authentication.  In other words, Caputo's allegedly employees "punch in" and "punch out" of work using their fingerprints.  (Ex. A, ¶ 32.)

4

23.    The *Krause* Lawsuit further alleges that Caputo's failed and continues to fail to inform its employees that it "discloses or disclosed their fingerprint data to at least one out-of-state third-party vendor, ADP, and likely others; fails to inform its employees that it discloses their fingerprint data to other, currently unknown, third parties, which host the biometric data in their data centers; fails to inform its employees of the purposes and duration for which it collects their sensitive biometric data; and fails to obtain written releases from employees before collecting their fingerprints." (Ex. A, ¶ 33.)

24.    The *Krause* Lawsuit alleges that Caputo's and ADP failed to provide Caputo's employees with a written, publicly available policy identifying their retention schedule and guidelines for permanently destroying employees' fingerprint data when the initial purpose for collecting or obtaining their fingerprints is no longer relevant, as required by the BIPA. (Ex. A, ¶ 35.)

25.    The *Krause* Lawsuit further alleges that Caputo's and ADP lack retention schedules and guidelines for permanently destroying biometric data.   (Ex. A, ¶ 35.)

26.    The *Krause* Lawsuit alleges that Krause worked as a maintenance director for Caputo's locations from May 2010 to September 4, 2018.  (Ex. A, ¶ 42.)

27.    The *Krause* Lawsuit further alleges that Krause was required to scan his fingerprint so Caputo's could use it as authentication to track his time. (Ex. A, ¶ 43.)

28.    The *Krause* Lawsuit alleges that Caputo's stored the fingerprint data in an ADP database.   (Ex. A, ¶ 43.)

29.    The *Krause* Lawsuit further alleges that Krause was never informed of the specific limited purpose or length of time for which any Defendant collected, stored, used, and/or disseminated his biometric data. (Ex. A, ¶ 45.)

30.     The *Krause* Lawsuit alleges that Krause has never been informed of any biometric data retention policy or if his data will ever be destroyed. (Ex. A, ¶ 46.)

31.     The *Krause* Lawsuit further alleges that Krause has also never been provided with or signed a written release allowing the collection, storage, use, or dissemination of his biometric data.  (Ex. A, ¶ 47.)

32.     Count I of the *Krause* Lawsuit alleges a violation of the BIPA by failing to institute, maintain, and adhere to a publicly available retention schedule.  (Ex. A, ¶¶ 64-73.)

33.     Count II of the *Krause* Lawsuit alleges a violation of the BIPA by failing to obtain informed written consent and release before obtaining biometric identifiers or information.   (Ex. A, ¶¶ 74-84.)

34.     Count III of the *Krause* Lawsuit alleges a violation of the BIPA by the disclosure of biometric identifiers and biometric information before obtaining consent.  (Ex. A, ¶¶ 85-94.)

35.     The *Krause* Lawsuit seeks class action certification, a declaration that Caputo's and ADP have violated the BIPA, statutory damages or $5,000 for each intentional or reckless BIPA violation and $1,000 for each negligent BIPA violation, injunctive and equitable relief, attorneys' fees, and other relief.  (Ex. A.)

## THE CONTINENTAL WESTERN POLICY

36.     Continental Western issued a multi-peril commercial lines insurance policy to Caputo's through policy number 3094700-20 for the policy period of June 15, 2015 to June 15, 2016 ("Continental Western Policy").  The Continental Western Policy provides, among other things, commercial general liability coverage subject to a $1,000,000 limit of liability per occurrence and a general aggregate limit of $2,000,000.  The Continental Western Policy also provides commercial liability umbrella coverage subject to a $10,000,000 limit of liability per

occurrence and a $10,000,000 aggregate limit. (A true and correct copy of the Continental Western Policy is attached hereto as **Exhibit B** and is incorporated herein by reference.)

**COUNT I**

**NO "BODILY INJURY" AS DEFINED IN THE CGL COVERAGE FORM**

37.     Continental Western adopts and realleges the allegations in paragraphs 1 through 36 of its Complaint for Declaratory Judgment as paragraph 37 of Count I of its Complaint for Declaratory Judgment as if fully set forth herein.

38.     The Continental Western Policy provides, in pertinent part, the following with respect to the commercial general liability ("CGL") coverage provided in Coverage A:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**
* * *

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.     Insuring Agreement**

    **a.**     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. * * *

* * *

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

* * *

    **b.**     This insurance applies to "bodily injury" and "property damage" only if:

        **(1)**     The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

7

> **(2)**     The "bodily injury" or "property damage" occurs during the
> policy period; and
> * * *

(Ex. B.)

39.     The Continental Western Policy defines the term "bodily injury" as follows:

> **SECTION V – DEFINITIONS**
> * * *
> **3.**     "Bodily injury" means bodily injury, sickness or disease sustained
> by a person, including death resulting from any of these at any time.
> * * *

 (Ex. B.)

40.     The *Krause* Lawsuit alleges no bodily injury, disability, sickness, or disease sustained by Krause or any other putative class member.  (Ex. A.)

41.     Therefore, the *Krause* Lawsuit does not allege "bodily injury" as defined by the Continental Western Policy.

42.     Continental Western has and had no duty under the Continental Western Policy to defend Caputo's against the *Krause* Lawsuit, or to indemnify Caputo's for any judgment or settlement entered in the *Krause* Lawsuit.

43.     An actual controversy exists between Continental Western, Caputo's, and Krause, and by the terms provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Continental Western, respectfully prays that this Honorable Court:

> a.     Determine and adjudicate the rights and liabilities of the parties
> hereto with respect to the Continental Western Policy;

b.      Find and declare that the claims asserted in the *Krause* Lawsuit do not constitute "bodily injury" as defined by the Continental Western Policy;

c.      Find and declare that Continental Western has and had no duty under the Continental Western Policy to defend Caputo's against the *Krause* Lawsuit, or to indemnify Caputo's for any judgment or settlement entered therein; and

d.      Grant Continental Western such other and further relief that the Court deems proper under the facts and circumstances.

## COUNT II

### THE "VIOLATION OF STATUTES" EXCLUSION BARS COVERAGE FOR THE CLAIMS ASSERTED IN THE *KRAUSE* LAWSUIT UNDER COVERAGE A

44.      Continental Western adopts and realleges the allegations in paragraphs 1 through 43 of its Complaint for Declaratory Judgment as paragraph 44 of Count II of its Complaint for Declaratory Judgment as if fully set forth herein.

45.      Coverage A of the Continental Western Policy's CGL Coverage incorporates the following exclusion relating to the violation of statutes:

**RECORDING AND DISTRIBUTION OF MATERIAL OR INFORMATION IN VIOLATION OF LAW EXCLUSION**
\* \* \*

**A.**    Exclusion **q.** of Paragraph **2. Exclusions** of Section **I – Coverage A – Personal And Advertising Injury Liability** is replaced by the following:

    **2.**    **Exclusions**

    This insurance does not apply to:

    **q.**    **Recording And Distribution Of Material Or Information In Violation Of Law**

        "Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:
        \* \* \*

        **(4)**    Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of

> 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

(Ex. B, hereinafter, the "Violation of Statutes" Exclusion.)

46.     The *Krause* Lawsuit asserts three counts for violation of the BIPA.  (Ex. A, ¶¶ 64-94.)

47.     The BIPA makes it unlawful to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or customer's biometric identifiers or biometric information unless [the entity] first: (1) informs the subject…in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject…in writing of the specific purpose and length of time for which a biometric identifier or biometric information is being captured, collected, stored, and used; and (3) receives a written release executed by the subject of the biometric identifier or biometric information…"  740 ILCS 14/15(b).

48.     Accordingly, even if, for the sake of discussion, the *Krause* Lawsuit alleged "bodily injury" within the policy period – which Continental Western expressly denies that it does – the "Violation of Statutes" Exclusion clearly and unambiguously bars coverage for the claims asserted in the *Krause* Lawsuit.

49.     Continental Western has and had no duty under the Continental Western Policy to defend Caputo's against the *Krause* Lawsuit, or to indemnify Caputo's for any judgment or settlement entered in the *Krause* Lawsuit.

50.     An actual controversy exists between Continental Western, Caputo's, and Krause, and by the terms provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Continental Western, respectfully prays that this Honorable Court:

a.      Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Continental Western Policy;

b.      Find and declare that the Continental Western Policy's "Violation of Statutes" Exclusion bars coverage for the damages alleged in the *Krause* Lawsuit;

c.      Find and declare that Continental Western has and had no duty under the Continental Western Policy to defend Caputo's against the *Krause* Lawsuit, or to indemnify Caputo's for any judgment or settlement entered therein; and

d.      Grant Continental Western such other and further relief that the Court deems proper under the facts and circumstances.

## COUNT III

## THE "VIOLATION OF STATUTES" EXCLUSION BARS COVERAGE FOR THE CLAIMS ASSERTED IN THE *KRAUSE* LAWSUIT UNDER COVERAGE B

51.      Continental Western adopts and realleges the allegations in paragraphs 1 through 50 of its Complaint for Declaratory Judgment as paragraph 51 of Count III of its Complaint for Declaratory Judgment as if fully set forth herein.

52.      The Continental Western Policy provides, in pertinent part, the following with respect to the CGL coverage provided in Coverage B:

**COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**

**1.      Insuring Agreement**

a.      We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.  We may, at our discretion, investigate any offense and settle any claim or "suit" that may result.
* * *

11

\* \* \*

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

\* \* \*

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

\* \* \*

(Ex. B.)

53. The Continental Western Policy defines the term "personal and advertising injury" as follows:

**SECTION V - DEFINITIONS**

\* \* \*

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

\* \* \*

(Ex. B.)

54. Coverage B of the Continental Western Policy's CGL Coverage also incorporates the following exclusion relating to the violation of statutes:

12

**RECORDING AND DISTRIBUTION OF MATERIAL OR
INFORMATION IN VIOLATION OF LAW EXCLUSION**
* * *

**B.**      Exclusion **p.** of Paragraph **2. Exclusions** of Section **I – Coverage B –
Personal And Advertising Injury Liability** is replace by the following:

**2.      Exclusions**
* * *

This insurance does not apply to:

**p.      Recording And Distribution Of Material Or Information
In Violation Of Law**

"Personal and advertising injury" arising directly or
indirectly out of any action or omission that violates or is
alleged to violate:
* * *

**(4)**      Any federal, state or local statute, ordinance or
regulation, other than the TCPA, CAN-SPAM Act of
2003 or FCRA and their amendments and additions,
that addresses, prohibits, or limits the printing,
dissemination, disposal, collecting, recording,
sending, transmitting, communicating or distribution
of material or information.

55.      The BIPA makes it unlawful to "collect, capture, purchase, receive through trade,

or otherwise obtain a person's or customer's biometric identifiers or biometric information unless

[the entity] first: (1) informs the subject…in writing that a biometric identifier or biometric

information is being collected or stored; (2) informs the subject…in writing of the specific purpose

and length of time for which a biometric identifier or biometric information is being captured,

collected, stored, and used; and (3) receives a written release executed by the subject of the

biometric identifier or biometric information…"  740 ILCS 14/15(b).

56.      Accordingly, even if, for the sake of discussion, the *Krause* Lawsuit alleged

"personal and advertising injury" within the policy period, the "Violation of Statutes" Exclusion

bars coverage for the claims asserted in the *Krause* Lawsuit.

57.     Continental Western has and had no duty under the Continental Western Policy to defend Caputo's against the *Krause* Lawsuit, or to indemnify Caputo's for any judgment or settlement entered in the *Krause* Lawsuit.

58.     An actual controversy exists between Continental Western, Caputo's, and Krause, and by the terms provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Continental Western, respectfully prays that this Honorable Court:

a.     Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Continental Western Policy;

b.     Find and declare that the Continental Western Policy's "Violation of Statutes" Exclusion bars coverage for the damages alleged in the *Krause* Lawsuit;

c.     Find and declare that Continental Western has and had no duty under the Continental Western Policy to defend Caputo's against the *Krause* Lawsuit, or to indemnify Continental Western for any judgment or settlement entered therein; and

d.     Grant Continental Western such other and further relief that the Court deems proper under the facts and circumstances.

## COUNT IV

### THE "DISCLOSURE OF PERSONAL INFORMATION" EXCLUSION BARS COVERAGE UNDER THE CGL COVERAGE FOR THE CLAIMS ASSERTED IN THE *KRAUSE* LAWSUIT

59.     Continental Western adopts and realleges the allegations in paragraphs 1 through 58 of its Complaint for Declaratory Judgment as paragraph 59 of Count IV of its Complaint for Declaratory Judgment as if fully set forth herein.

60.    The Continental Western Policy's CGL Coverage incorporates the following exclusion relating to the access or disclosure of confidential or personal information and data-related liability:

### EXCLUSION – ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY – WITH LIMITED BODILY INJURY EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A.    Exclusion **2.p.** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

  **2.**    **Exclusions**

    This insurance does not apply to:

    **p.**    **Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

      Damages arising out of:

      **(1)**    Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, health information or any other type of nonpublic information.* * *

      As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

B.    The following is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability**:

  **2.**    **Exclusions**

15

This insurance does not apply to:

**Access Or Disclosure Of Confidential Or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

\* \* \*

(Ex. B, hereinafter referred to as the "Disclosure of Personal Information Exclusion").

61.     The *Krause* Lawsuit alleges that Caputo's violated the BIPA by its wrongful collection and dissemination of confidential and personal biometric indicators and biometric information to its third party data storage and payroll vendors.  (Ex. A.)

62.     Accordingly, even if, for the sake of argument, the *Krause* Lawsuit asserted claims that would constitute "bodily injury", "property damage", and/or "personal and advertising injury" – which Continental Western expressly denies that it does – the "Disclosure of Personal Information Exclusion" bars coverage for the claims asserted in the *Krause* Lawsuit.

63.     Continental Western has and had no duty under the Continental Western Policy to defend Caputo's against the *Krause* Lawsuit, or to indemnify Caputo's for any judgment or settlement entered in the *Krause* Lawsuit.

64.     An actual controversy exists between Continental Western, Caputo's, and Krause, and by the terms provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Continental Western, respectfully prays that this Honorable Court:

a. Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Continental Western Policy;

b. Find and declare that the "Disclosure of Personal Information Exclusion" bars coverage for the claims asserted in the *Krause* Lawsuit;

c. Find and declare that Continental Western has and had no duty under the Continental Western Policy to defend Caputo's against the *Krause* Lawsuit, or to indemnify Caputo's for any judgment or settlement entered therein; and

d. Grant Continental Western such other and further relief that the Court deems proper under the facts and circumstances.

## COUNT V

## THE "EMPLOYMENT-RELATED PRACTICES" EXCLUSION BARS CGL COVERAGE FOR THE CLAIMS ASSERTED IN THE *KRAUSE* LAWSUIT

65. Continental Western adopts and realleges the allegations in paragraphs 1 through 64 of its Complaint for Declaratory Judgment as paragraph 65 of Count V of its Complaint for Declaratory Judgment as if fully set forth herein.

66. The Continental Western Policy's CGL Coverage also incorporates the following exclusion relating to employment-related practices:

### EMPLOYMENT-RELATED PRACTICES EXCLUSION
* * *

A. The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

**(a)** Refusal to employ that person;

17

**(b)** Termination of that person's employment; or

**(c)** Employment-related practices, policies, acts or omissions such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; * * *

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)**, or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

**(a)** Refusal to employ that person;

**(b)** Termination of that person's employment; or

**(c)** Employment-related practices, policies, acts or omissions such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; * * *

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)**, or **(c)** above occurs before employment, during employment or after employment of that person;

18

(2)     Whether the insured may be liable as an employer or in any other capacity; and

(3)     To any obligation to share damages with or repay someone else who must pay damages because of the injury.

(Ex. B, hereinafter, the "Employment-Related Practices Exclusion.")

67.     The *Krause* Lawsuit asserts claims for "employment-related practices, policies, acts or omissions" e.g., the policy of requiring Caputo's employees to submit to biometric scanning and time-tracking devices and technology to monitor and track the employees' time and performance, as well as the lack of informed consent by Caputo's employees.  (Ex. B.)

68.     Accordingly, even if, for the sake of argument, the *Krause* Lawsuit asserted claims that would constitute "bodily injury", "property damage", and/or "personal and advertising injury" – which Continental Western expressly denies that it does – the "Employment-Related Practices Exclusion" bars coverage for the claims asserted in the *Krause* Lawsuit.

69.     Continental Western has and had no duty under the Continental Western Policy to defend Caputo's against the *Krause* Lawsuit, or to indemnify Caputo's for any judgment or settlement entered in the *Krause* Lawsuit.

70.     An actual controversy exists between Continental Western, Caputo's, and Krause, and by the terms provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Continental Western, respectfully prays that this Honorable Court:

a.     Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Continental Western Policy;

19

b.  Find and declare that the "Employment-Related Practices Exclusion" bars coverage for the claims asserted in the *Krause* Lawsuit;

c.  Find and declare that Continental Western has and had no duty under the Continental Western Policy to defend Caputo's against the *Krause* Lawsuit, or to indemnify Caputo's for any judgment or settlement entered therein; and

d.  Grant Continental Western such other and further relief that the Court deems proper under the facts and circumstances.

## COUNT VI

## ALLEGED INJURIES OCCURRED OUTSIDE OF THE POLICY PERIOD

71.  Continental Western adopts and realleges the allegations in paragraphs 1 through 70 of its Complaint for Declaratory Judgment as paragraph 71 of Count VI of its Complaint for Declaratory Judgment as if fully set forth herein.

72.  Coverage A of the Continental Western Policy provides coverage for "bodily injury" or "property damage" that occurs during the policy period.  (Ex. B.)

73.  Coverage B of the Continental Western Policy provides coverage for "personal and advertising injury" that occurs during the policy period.  (Ex. B.)

74.  Even if, for the sake of argument, the *Krause* Lawsuit asserted claims that would constitute "bodily injury", "property damage", and/or "personal and advertising injury" – which Continental Western expressly denies that it does – any "bodily injury", "property damage", and/or "personal and advertising injury" must occur during the policy period for coverage to be triggered. (Ex. B.)

75.  The *Krause* Lawsuit defines the putative class as "All individuals working for Defendant Caputo's in the State of Illinois who had their fingerprints collected, captured, received, obtained, stored or disclosed by any Defendant during the applicable statutory period."  (Ex. A, ¶ 54.)

76.     The Continental Western Policy had a policy period of June 15, 2015 to June 15, 2016.  (Ex. B.)

77.     To the extent that any putative class members were injured outside of the policy period of the Continental Western Policy, the Continental Western Policy provides no coverage for any such injuries.  (Ex. B.)

78.     Continental Western has and had no duty under the Continental Western Policy to defend Caputo's against the *Krause* Lawsuit, or to indemnify Caputo's for any judgment or settlement entered in the *Krause* Lawsuit.

79.     An actual controversy exists between Continental Western, Caputo's, and Krause, and by the terms provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Continental Western, respectfully prays that this Honorable Court:

    a.     Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Continental Western Policy;

    b.     Find and declare that claims asserted in the *Krause* Lawsuit fall outside of the policy period of the Continental Western Policy;

    c.     Find and declare that Continental Western has and had no duty under the Continental Western Policy to defend Caputo's against the *Krause* Lawsuit, or to indemnify Caputo's for any judgment or settlement entered therein; and

    d.     Grant Continental Western such other and further relief that the Court deems proper under the facts and circumstances.

<u>COUNT VII</u>

**<u>NO COVERAGE IS PROVIDED BY COVERAGE A OF THE CONTINENTAL WESTERN POLICY'S COMMERCIAL LIABILITY UMBRELLA COVERAGE FOR THE CLAIMS ASSERTED IN THE *KRAUSE* LAWSUIT</u>**

80.     Continental Western adopts and realleges the allegations in paragraphs 1 through 79 of its Complaint for Declaratory Judgment as paragraph 80 of Count VII of its Complaint for Declaratory Judgment as if fully set forth herein.

81.     The Continental Western Policy provides, in pertinent part, the following with respect to the commercial liability umbrella coverage provided by Coverage A:

**COMMERCIAL LIABILITY UMBRELLA COVERAGE FORM**
\* \* \*

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.      Insuring Agreement**

**a.**     We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking damages for such "bodily injury" or "property damage" when the "underlying insurance" does not provide coverage or the limits of the "underlying insurance" have been exhausted…However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  At our discretion, we may investigate any "occurrence" that may involve this insurance and settle any resultant claim or "suit", for which we have the duty to defend.  \* \* \*
\* \* \*

**c.**     This insurance applies to "bodily injury" and "property damage" only if:

**(1)**     The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

> **(2)** The "bodily injury" or "property damage" occurs during the policy period; and
>
> **(3)** Prior to the policy period, no insured listed under Paragraph **1.a.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part…
> * * *

(Ex. B.)

82. The Continental Western Policy's umbrella coverage defines the terms "bodily injury" and "property damage" as follows:

**SECTION V – DEFINITIONS**
* * *

**3.** "Bodily injury" means bodily injury, disability, sickness or disease sustained by a person, including death resulting from any of these at any time. "Bodily injury" includes mental anguish or other mental injury resulting from "bodily injury".
* * *

**18.** "Property damage" means:

> **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.
> * * *

For the purposes of this insurance, with respect to other than the ownership, maintenance or use of "covered autos", electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or use on, or transmitted to or from computer software (including systems and applications software), hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.
* * *

(Ex. B.)

83.     As modified by the Recording and Distribution of Material or Information in Violation of Law Exclusion, Coverage A of the Continental Western Policy's umbrella coverage also incorporates the following exclusion relating to the recording and distribution of material or information in violation of law:

**2.      Exclusions**

This insurance does not apply to:

\* \* \*

**u.      Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

\* \* \*

**(4)**      Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

(Ex. B.)

84.     Coverage A of the Continental Western Policy's umbrella coverage also incorporates the following exclusion relating to employment-related practices:

**2.      Exclusions**

This insurance does not apply to:

\* \* \*

**h.      Employment-related Practices**

"Bodily injury" to:

**(1)**      A person arising out of any:

**(a)**      Refusal to employ that person;

**(b)**      Termination of that person's employment; or

24

(c)     Employment-related practices, policies, acts or omissions such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; * * *

This exclusion applies whether the injury-causing event described in Paragraphs **(a), (b)**, or **(c)** above occurs before employment, during employment or after employment of that person;

This exclusion applies whether the insured may be liable as an employer or in any other capacity, and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

(Ex. B.)

85.     The *Krause* Lawsuit alleges no bodily injury, sickness, or disease sustained by Krause or any other putative class member.  (Ex. A.)

86.     Additionally, the *Krause* Lawsuit alleges no mental anguish or other mental injury resulting from any bodily injury, sickness, or disease sustained by Krause or any other putative class member.  (Ex. A.)

87.     The *Krause* Lawsuit therefore does not allege "bodily injury" as defined by the Continental Western Policy.

88.     Even if, for the sake of argument, the *Krause* Lawsuit asserted claims that would constitute "bodily injury" – which Continental Western expressly denies that it does – any "bodily injury" must occur during the policy period for coverage to be triggered.  (Ex. B.)

89.     The *Krause* Lawsuit defines the putative class as "All individuals working for Defendant Caputo's in the State of Illinois who had their fingerprints collected, captured, received, obtained, stored or disclosed by any Defendant during the applicable statutory period."  (Ex. A, ¶ 54.)

90.    The Continental Western Policy had a policy period of June 15, 2015 to June 15, 2016.  (Ex. B.)

91.    To the extent that any putative class members were injured outside of the policy period of the Continental Western Policy, the Continental Western Policy provides no coverage for any such injuries.  (Ex. B.)

92.    The BIPA makes it unlawful to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or customer's biometric identifiers or biometric information unless [the entity] first: (1) informs the subject…in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject…in writing of the specific purpose and length of time for which a biometric identifier or biometric information is being captured, collected, stored, and used; and (3) receives a written release executed by the subject of the biometric identifier or biometric information…"  740 ILCS 14/15(b).

93.    The *Krause* Lawsuit alleges that Caputo's violated the BIPA by its wrongful collection and dissemination of confidential and personal biometric indicators and biometric information to its third party data storage and payroll vendors.  (Ex. A.)

94.    Accordingly, even if, for the sake of argument, the *Krause* Lawsuit alleged "bodily injury" – which Continental Western expressly denies that it does – the "Recording and Distribution of Material or Information in Violation of Law" Exclusion bars coverage for the claims asserted in the *Krause* Lawsuit.

95.    The *Krause* Lawsuit asserts claims for "employment-related practices, policies, acts or omissions" e.g., the policy of requiring Caputo's employees to submit to biometric scanning and time-tracking devices and technology to monitor and track the employees' time and performance, as well as the lack of informed consent by Caputo's employees.  (Ex. B.)

96. Accordingly, even if, for the sake of argument, the *Krause* Lawsuit asserted claims that would constitute "bodily injury" – which Continental Western expressly denies that it does – the "Employment-Related Practices Exclusion" bars coverage for the claims asserted in the *Krause* Lawsuit.

97. Continental Western has and had no duty under the Continental Western Policy's umbrella coverage to defend Caputo's against the *Krause* Lawsuit, or to indemnify Caputo's for any judgment or settlement entered in the *Krause* Lawsuit.

98. An actual controversy exists between Continental Western, Caputo's, and Krause, and by the terms provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Continental Western, respectfully prays that this Honorable Court:

a. Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Continental Western Policy;

b. Find and declare that no coverage is provided by Coverage A of the Continental Western Policy's Commercial Liability Umbrella Coverage for the damages alleged in the *Krause* Lawsuit;

c. Find and declare that Continental Western has and had no duty under the Continental Western Policy to defend Caputo's against the *Krause* Lawsuit, or to indemnify Caputo's for any judgment or settlement entered therein; and

d. Grant Continental Western such other and further relief that the Court deems proper under the facts and circumstances.

27

## COUNT VIII

### NO COVERAGE IS PROVIDED BY COVERAGE B OF THE CONTINENTAL WESTERN POLICY'S COMMERCIAL LIABILITY UMBRELLA COVERAGE FOR THE CLAIMS ASSERTED IN THE *KRAUSE* LAWSUIT

99.     Continental Western adopts and realleges the allegations in paragraphs 1 through 98 of its Complaint for Declaratory Judgment as paragraph 99 of Count VIII of its Complaint for Declaratory Judgment as if fully set forth herein.

100.    The Continental Western Policy provides, in pertinent part, the following with respect to the umbrella coverage provided by Coverage B:

**COMMERCIAL LIABILITY UMBRELLA COVERAGE FORM**
\* \* \*

**SECTION I – COVERAGES**
\* \* \*
**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

**1.      Insuring Agreement**

    **a.**      We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking damages for such "personal and advertising injury" when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted. When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other "suit" seeking damages to which this insurance may apply. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. At our discretion, we may investigate any offense that may involve this insurance and settle any resultant claim or "suit", for which we have the duty to defend. \* \* \*

                    \* \* \*

    **c.**      This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.
\* \* \*

28

(Ex. B.)

101.     The Continental Western Policy's umbrella coverage defines the term "personal and advertising injury" as follows:

**SECTION V - DEFINITIONS**

**14.**     "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.**     False arrest, detention or imprisonment;

**b.**     Malicious prosecution;

**c.**     The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.**     Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.**     Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.**     The use of another's advertising idea in your "advertisement"; or

**g.**     Infringing upon another's copyright, trade dress or slogan in your "advertisement".

* * *

(Ex. B.)

102.     As modified by the Recording and Distribution of Material or Information in Violation of Law Exclusion, Coverage B of the Continental Western Policy's umbrella coverage also incorporates the following exclusion relating to the recording and distribution of material or information in violation of law:

**2.     Exclusions**

This insurance does not apply to:

**a.**     "Personal and advertising injury":

29

* * *

**(17)    Recording And Distribution Of Material Or Information In Violation Of Law**

Arising directly or indirectly out of any action or omission that violates or is alleged to violate:

* * *

**(d)**    Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

* * *

(Ex. B.)

103.    Coverage B of the Continental Western Policy's Umbrella coverage also incorporates the following exclusion relating to employment-related practices:

**2.    Exclusions**

This insurance does not apply to:

**a.**    "Personal and advertising injury":

* * *

**(14)    Employment-related Practices**

To:

**(a)**    A person arising out of any:

**(i)**    Refusal to employ that person;

**(ii)**    Termination of that person's employment; or

**(iii)**    Employment-related practices, policies, acts or omissions such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; * * *

This exclusion applies whether the injury-causing event described in Paragraphs **(i), (ii)**, or **(iii)** above occurs before employment, during employment or after employment of that person.

This exclusion applies whether the insured may be liable as an employer or in any other capacity, and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

(Ex. B.)

104.    Even if, for the sake of argument, the *Krause* Lawsuit asserted claims that would constitute "personal and advertising injury", any "personal and advertising injury" must occur during the policy period for coverage to be triggered.  (Ex. B.)

105.    The *Krause* Lawsuit defines the putative class as "All individuals working for Defendant Caputo's in the State of Illinois who had their fingerprints collected, captured, received, obtained, stored or disclosed by any Defendant during the applicable statutory period."  (Ex. A, ¶ 54.)

106.    The Continental Western Policy had a policy period from June 15, 2015 to June 15, 2016.  (Ex. B.)

107.    To the extent that any putative class members were injured outside of the policy period of the Continental Western Policy, the Continental Western Policy provides no coverage for any such injuries.  (Ex. B.)

108.    The BIPA makes it unlawful to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or customer's biometric identifiers or biometric information unless [the entity] first: (1) informs the subject…in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject…in writing of the specific purpose and length of time for which a biometric identifier or biometric information is being captured,

31

collected, stored, and used; and (3) receives a written release executed by the subject of the biometric identifier or biometric information…" 740 ILCS 14/15(b).

109.    The *Krause* Lawsuit alleges that Caputo's violated the BIPA by its wrongful collection and dissemination of confidential and personal biometric indicators and biometric information to its third party data storage and payroll vendors.  (Ex. A.)

110.    Accordingly, even if, for the sake of argument, the *Krause* Lawsuit alleged "personal and advertising injury", the "Recording and Distribution of Material or Information in Violation of Law" Exclusion bars coverage for the claims asserted in the *Krause* Lawsuit.

111.    The *Krause* Lawsuit asserts claims for "employment-related practices, policies, acts or omissions" e.g., the policy of requiring Caputo's employees to submit to biometric scanning and time-tracking devices and technology to monitor and track the employees' time and performance, as well as the lack of informed consent by Caputo's employees.  (Ex. B.)

112.    Accordingly, even if, for the sake of argument, the *Krause* Lawsuit asserted claims that would constitute "personal and advertising injury", the "Employment-Related Practices Exclusion" bars coverage for the claims asserted in the *Krause* Lawsuit.

113.    Continental Western has and had no duty under the Continental Western Policy's umbrella coverage to defend Caputo's against the *Krause* Lawsuit, or to indemnify Caputo's for any judgment or settlement entered in the *Krause* Lawsuit.

114.    An actual controversy exists between Continental Western, Caputo's, and Krause, and by the terms provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Continental Western, respectfully prays that this Honorable Court:

     a.    Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Continental Western Policy;

     b.    Find and declare that no coverage is provided by Coverage B of the Continental Western Policy's Commercial Liability Umbrella Coverage for the damages alleged in the *Krause* Lawsuit;

     c.    Find and declare that Continental Western has and had no duty under the Continental Western Policy to defend Caputo's against the *Krause* Lawsuit, or to indemnify Caputo's for any judgment or settlement entered therein; and

     d.    Grant Continental Western such other and further relief that the Court deems proper under the facts and circumstances.

## COUNT IX

### THE "DISCLOSURE OF PERSONAL INFORMATION" EXCLUSION BARS COVERAGE UNDER THE CONTINENTAL WESTERN POLICY'S COMMERCIAL LIABILITY UMBRELLA COVERAGE FOR THE CLAIMS ASSERTED IN THE *KRAUSE* LAWSUIT

115.    Continental Western adopts and realleges the allegations in paragraphs 1 through 114 of its Complaint for Declaratory Judgment as paragraph 115 of Count IX of its Complaint for Declaratory Judgment as if fully set forth herein.

116.    The Continental Western Policy's umbrella coverage also incorporates the following exclusion relating to the access or disclosure of confidential or personal information and data-related liability:

**EXCLUSION – ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY – WITH LIMITED BODILY INJURY EXCEPTION**

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

A.  Exclusion **2.t.** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

    **2.**    **Exclusions**

        **t.**    **Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

Damages arising out of:

**(1)**    Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, health information or any other type of nonpublic information.* * *

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

B.  The following is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability**:

    **2.**    **Exclusions**

This insurance does not apply to:

**Access Or Disclosure Of Confidential Or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

\* \* \*

34

(Ex. B, hereinafter referred to as the "Disclosure of Personal Information Exclusion").

117.     The *Krause* Lawsuit alleges that Caputo's violated the BIPA by its wrongful collection and dissemination of confidential and personal biometric indicators and biometric information to its third party data storage and payroll vendors. (Ex. A.)

118.     Accordingly, even if, for the sake of argument, the *Krause* Lawsuit asserted claims that would constitute "bodily injury", "property damage", and/or "personal and advertising injury" – which Continental Western expressly denies that it does – the "Disclosure of Personal Information Exclusion" bars coverage for the claims asserted in the *Krause* Lawsuit.

119.     Continental Western has and had no duty under the Continental Western Policy to defend Caputo's against the *Krause* Lawsuit, or to indemnify Caputo's for any judgment or settlement entered in the *Krause* Lawsuit.

120.     An actual controversy exists between Continental Western, Caputo's, and Krause, and by the terms provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Continental Western, respectfully prays that this Honorable Court:

   a.     Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Continental Western Policy;

   b.     Find and declare that the "Disclosure of Personal Information Exclusion" bars coverage for the claims asserted in the *Krause* Lawsuit;

   c.     Find and declare that Continental Western has and had no duty under the Continental Western Policy to defend Caputo's against the *Krause* Lawsuit, or to indemnify Caputo's for any judgment or settlement entered therein; and

      d.     Grant Continental Western such other and further relief that the Court deems proper under the facts and circumstances.

**COUNT X**

**NO COVERAGE FOR PUNITIVE OR EXEMPLARY DAMAGES**

121.    Continental Western adopts and realleges the allegations in paragraphs 1 through 120 of its Complaint for Declaratory Judgment as paragraph 121 of Count X of its Complaint for Declaratory Judgment as if fully set forth herein.

122.    The Continental Western Policy's umbrella coverage incorporates the following exclusion relating to punitive damages:

**EXCLUSION**
**PUNITIVE DAMAGES**
**ILLINOIS**

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

This insurance does not apply to punitive or exemplary damages (including any multiple of compensatory damages, such as double or treble damages) awarded against an insured.

This exclusion does not relieve us of our duty to defend claims falling within the scope of coverage that seek compensatory damages, or claims falling within the scope of coverage that seek both compensatory damages and punitive damages. Our duty to defend claims seeking punitive damages ends, however, when all claims for associated compensatory damages have been settled, adjudicated to finality, or the policy limits have been exhausted.

\* \* \*

(Ex. B, hereinafter the "Punitive Damages Exclusion").

123.    The Continental Western Policy's Umbrella Liability Coverage Part's "Punitive Damages" Exclusion bars coverage under the Commercial Umbrella Liability Coverage Part for any punitive and/or exemplary damages that are ultimately awarded in the *Krause* Lawsuit.

36

124.     Continental Western has and had no duty under the Continental Western Policy to defend Caputo's against the *Krause* Lawsuit, or to indemnify Caputo's for any judgment or settlement entered in the *Krause* Lawsuit.

125.     An actual controversy exists between Continental Western, Caputo's, and Krause, and by the terms provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Continental Western, respectfully prays that this Honorable Court:

a.     Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Continental Western Policy;

b.     Find and declare that no coverage is provided by the Continental Western Policy's Commercial Liability Umbrella Coverage for the damages alleged in the *Krause* Lawsuit;

c.     Find and declare that Continental Western has and had no duty under the Continental Western Policy to defend Caputo's against the *Krause* Lawsuit, or to indemnify Caputo's for any judgment or settlement entered therein; and

d.     Grant Continental Western such other and further relief that the Court deems proper under the facts and circumstances.

**TRAUB, LIEBERMAN, STRAUS & SHREWSBERRY LLP**

By:   /s/ Dana A. Rice
Dana A. Rice (6283827)
Adam P. Joffe (6300116)
71 S. Wacker Drive, Suite 2110
Chicago, IL 60606
P: 312-332-3900
F: 312-332-3908
drice@tlsslaw.com
ajoffe@tlsslaw.com

**ATTORNEYS FOR CONTINENTAL WESTERN INSURANCE COMPANY**